# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 10-CR-24-LRR |
| vs. | **ORDER** |
| KENNETH FLOYD BOWMAN, | |
| Defendant. | |

_____

## *I. INTRODUCTION*

The matter before the court is Defendant Kenneth Floyd Bowman's Objections (docket no. 38) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 33). Judge Scoles recommends that the undersigned deny Defendant's Motion to Suppress ("Motion") (docket no. 16).

## *II. RELEVANT PROCEDURAL HISTORY*

On April 2, 2010, a grand jury returned a one-count Indictment (docket no. 2) against Defendant. Count 1 charges Defendant with Possession with Intent to Distribute 500 Grams of Cocaine, after having previously been convicted of a felony drug offense, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. On May 5, 2010, Defendant filed the Motion. On May 14, 2010, the government filed its Resistance (docket no. 25). On May 25, 2010, Judge Scoles held a hearing ("Hearing") on the Motion. Attorney Michael Lahammer represented Defendant, who was personally present. Special Assistant United States Attorney Daniel Chatham represented the government. On May 26, 2010, Defendant filed a supplement ("Supplement") (docket no. 28) to the Motion. On May 28, 2010, the government filed a Response (docket no. 29) to the Supplement. On June 3, 2010, Judge Scoles filed the Report and Recommendation. On June 17, 2010, Defendant filed his Objections.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *see also* Fed. R. Crim. P. 59(b)(3) (stating "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed R. Crim. P. 59(b)(3) (stating a district judge "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions"). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the undersigned reviews Defendant's objections de novo.

## IV. ANALYSIS

Defendant lodges four objections to Judge Scoles's conclusions of law. First, Defendant objects to Judge Scoles's finding that Iowa State Trooper Justin Simmons did not unreasonably prolong the traffic stop. Second, Defendant objects to Judge Scoles's finding that he was not seized after he received his warning ticket and that if he was seized, reasonable suspicion supported such a seizure. Third, Defendant objects to Judge Scoles's finding that he voluntarily consented to wait for a short period of time for a canine to arrive. Fourth, Defendant objects to Judge Scoles's conclusion that probable cause supported the search of Defendant's vehicle. The undersigned addresses these objections in turn.

2

## A. *Duration of Traffic Stop*

Defendant argues that Trooper Simmons unconstitutionally prolonged the length of the traffic stop. "A constitutionally permissible traffic stop can become unlawful . . . 'if it is prolonged beyond the time reasonably required to complete' its purpose." *United States v. Suitt*, 569 F.3d 867, 870 (8th Cir. 2009) (quoting *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008)). "During a traffic stop, an officer may detain the occupants of the vehicle while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation." *Id.* "'A reasonable investigation includes asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose.'" *Id.* at 870-81 (quoting *United States v. Sanchez*, 471 F.3d 971, 975 (8th Cir. 2005)).

In support of his objection, Defendant cites *Peralez*. In *Peralez*, an officer prolonged a traffic stop for ten minutes after he informed the driver that he would receive a warning for the traffic violation. 526 F.3d at 1118. "Because the officer in *Peralez* used the 10-minute extension to engage the suspects in a series of drug interdiction questions unrelated to the basis of the stop, [the Eighth Circuit Court of Appeals] held that the trooper's focus on non-routine questions 'prolonged the stop beyond the time reasonably required to complete its purpose.'" *Suitt*, 569 F.3d at 871 (quoting *Peralez*, 526 F.3d at 1121).

Judge Scoles distinguished *Peralez* from the instant case. The undersigned agrees with Judge Scoles's analysis. At the Hearing, Trooper Simmons testified that he initially asked Defendant "[g]eneral question[s][—]where he's going and coming from." Transcript ("Tr.") (docket no. 30), at 12. These types of questions are permissible and do not unlawfully prolong a traffic stop. *Id.* at 870-71. Accordingly, the objection is overruled.

3

## B. Seizure

Defendant's second objection is two-fold. First, he objects to Judge Scoles's conclusion that Trooper Simmons did not seize him as he walked toward his vehicle. Second, he objects to Judge Scoles's conclusion that if he was seized, reasonable suspicion supported the seizure.

### 1. Seizure

There are three categories of law enforcement encounters. *United States v. Johnson*, 326 F.3d 1018, 1021 (8th Cir. 2003). First, there are consensual encounters, which are described as "communications between officers and citizens that are consensual and involve no coercion or restraint of liberty." *Id.* The Fourth Amendment does not apply to consensual encounters. *Id.* Second, there are *Terry* stops,[1] which are "brief, minimally intrusive seizures which are considered significant enough to invoke Fourth Amendment safeguards and thus must be supported by a reasonable suspicion of criminal activity." *Id.* Third, there are custodial arrests, which "must be based on probable cause." *Id.*

"In determining whether a person has been seized for Fourth Amendment purposes, the relevant question is whether, in view of the totality of circumstances surrounding the incident, a reasonable person would have believed he was free to leave." *Id.* (citing *INS v. Delgado*, 466 U.S. 210, 215 (1984)). No factor or set of factors exists which necessarily makes an encounter a seizure. *Id.* However, the Supreme Court has identified several factors which "inform the determination of whether a seizure took place." *Id.* at 1022. These factors include:

> officers positioning themselves in a way that limits the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

> necessary, the officer's retention of the person's property, or an officer's indication that the person is the focus of a particular investigation[.]

*Id.* (internal citation omitted).

After Trooper Simmons completed the warning ticket and gave it to Defendant, he told him "he was free to leave and to have a safe . . . trip." Tr. at 17. Once Defendant began to walk toward his vehicle, Trooper Simmons asked him if "he had time for a couple questions." *Id.* Defendant argues that, at this point, he had been seized without reasonable suspicion. The undersigned disagrees. Officer Simmons did not touch Defendant nor did he position himself between Defendant and his vehicle. In short, none of the factors that tend to suggest seizure were present at this point in the encounter. Accordingly, the encounter was consensual and the Fourth Amendment was not implicated. The objection is overruled.

### 2. *Reasonable suspicion*

Because Trooper Simmons did not seize Defendant, the undersigned need not consider whether Trooper Simmons had reasonable suspicion to seize Defendant as he walked back to his car after Trooper Simmons had given him the warning ticket. Nevertheless, the court finds that even if a seizure took place, it was authorized by reasonable suspicion.

To authorize an investigative seizure, law enforcement must have "reasonable suspicion that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). Like seizure, there is no firm definition of what constitutes reasonable suspicion. *Id.* Reasonable suspicion is "something more than an inchoate and unparticularized suspicion or hunch." *Id.* (internal quotation marks omitted). However, it is "considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* The court must evaluate the totality of the circumstances to determine whether law enforcement had reasonable suspicion that Defendant may be engaging in

5

criminal activity. *United States v. Gray*, 213 F.3d 998, 1001 (8th Cir. 2000). The undersigned agrees with Judge Scoles's analysis of this issue and finds that the totality of the circumstances supports a finding of reasonable suspicion.

### C. Consent

Defendant objects to Judge Scoles's conclusion that he voluntarily consented to wait a short period of time for a canine to arrive to sniff the exterior of his vehicle. Consent is voluntary if it is "'the product of an essentially free and unconstrained choice by its maker.'" *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990) (quoting *Schneckloth v. Bustamone*, 412 U.S. 218, 222 (1973)). To determine voluntariness, courts consider both the characteristics of the person consenting and the environment in which the person gave consent. *Id.* at 380-81.

The following characteristics of the person consenting are considered:

> (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

*Id.* at 381 (internal citations omitted).

Courts ask the following questions about the environment in which law enforcement received consent:

> (1) was [the person consenting] detained and questioned for a long or short time; (2) was [he] threatened, physically intimidated, or punished by the police; (3) [did he rely] upon promises or misrepresentations made by the police; (4) was [he] in custody or under arrest when the consent was given; (5) was [he] in a public or a secluded place; or (6) [did he] either object[] to the [canine sniff] or [stand] by silently while [it] occurred.

*Id.*

The undersigned agrees with Judge Scoles's analysis of these factors. The evidence indicates that Defendant voluntarily consented to wait for the canine to arrive. Tellingly, Defendant did not consent to a search of his car, indicating that he was aware of his right to refuse consent. However, when asked if he would wait for a canine, he responded "that's cool." Tr. at 19. Accordingly, the objection is overruled.

### D. Probable Cause

Defendant objects to Judge Scoles's finding that the law enforcement officers had probable cause to search his vehicle. He asserts that "Jake," the canine that alerted the officers to the presence of narcotics, is unreliable. Once a canine alerts law enforcement officers to the presence of narcotics, the officers have probable cause to search the vehicle without a warrant. *United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007).

The undersigned agrees with Judge Scoles's analysis of this issue. This case is similar to *Donnelly*. Like the canine in *Donnelly*, Jake receives "consistent training," has "been examined and considered competent" and is "properly certified[.]" *Id.* Based on these factors, after Jake alerted the officers to the presence of narcotics, "there was a fair probability that [Defendant's] vehicle contained drugs." *Id.*

Defendant cites *Matheson v. State*, 870 So. 3d 8 (Fla. Dist. Ct. App. 2003), in support of his argument. As an initial matter, the court is not bound by an opinion of the Florida Court of Appeals. In any event, this case is distinguishable. *Matheson* holds that "the fact that a dog has been trained and certified to detect narcotics, standing alone, [is insufficient to justify] an officer's reliance on the dog's alert to establish probable cause to search." *Matheson*, 870 So. 3d at 12. Jake has been trained, certified, considered competent, and has a relatively reliable track record. Although Jake has not received the highest possible ratings, Judge Scoles was aware of only "one case" in which "Jake alerted to the presence of a narcotic odor, with no apparent connection to the presence of controlled substances." Report and Recommendation at 19. The canine found reliable in

7

*Donnelly* had an accuracy rate that slightly exceeded fifty percent. *Donnelly*, 475 F.3d at 955. Accordingly, the objection is overruled.

## V. CONCLUSION

In light of the foregoing, the court **ORDERS:**

(1)    Defendant's Objections (docket no. 38) are **OVERRULED**;

(2)    The Report and Recommendation (docket no. 33) is **ADOPTED**; and

(3)    The Motion (docket no. 16) is **DENIED**.

**IT IS SO ORDERED**.

**DATED** this 29th day of June, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA